IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION and related entities., | ) ) ) | Case No. _4:16-cv-906_ |
| Plaintiffs, | ) ) | Jury Demanded |
| v. | ) ) ) | |
| LOCKHEED MARTIN CORPORATION, | ) ) ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY RELIEF

### NATURE OF ACTION

1.     This is a declaratory judgment action, which relates to a dispute over whether Exxon Mobil Corporation ("ExxonMobil"), as successor to Mobil Finishes Company, Inc. ("Mobil Finishes"), owes Lockheed Martin Corporation ("Lockheed Martin"), as successor to Martin-Marietta Corporation ("Martin-Marietta"), contractual defense and indemnity arising from a 1963 asset purchase agreement between the parties, whereby Mobil Finishes purchased certain assets from Martin-Marietta, including the so-called "Dum Dum" product line.

2.     Defendant Lockheed Martin now claims that a single, vague provision from a fully integrated agreement entered into by the parties' predecessors in 1963 obligates ExxonMobil to indemnify and defend Lockheed Martin against a wide range of third-party lawsuits today.  The contract provision at issue, however, shows no indication (express or implied) that the parties ever intended ExxonMobil or its predecessor to take on such sweeping indemnity obligations.  Indeed, the provision nowhere uses the words "indemnify" or "defend."

Nor does it make any reference to the broad category of claims for which Lockheed Martin now seeks indemnity—third-party asbestos lawsuits filed against Lockheed Martin, many of which relate to alleged asbestos exposure pre-dating the 1963 agreement between Martin-Marietta and Mobil Finishes.  Moreover, in the 50-plus years after the contract was executed, and through decades of defending itself against thousands of such asbestos lawsuits, Lockheed Martin has never once made reference to—much less sought to exercise—this supposed contractual right to indemnity or defense.  Until now.

3.   ExxonMobil asks the Court to declare that Lockheed Martin is not entitled to past, present, or future indemnity or defense.  Specifically, ExxonMobil seeks a declaration that the 1963 asset purchase agreement between Martin-Marietta and Mobil Finishes does not give rise to an obligation to pay or reimburse costs that Lockheed Martin; its predecessor, Martin-Marietta; or Martin-Marietta's insurer, Continental Casualty Company ("CCC"), allegedly incurred or may incur in connection with lawsuits alleging asbestos bodily injury claims against Martin-Marietta or Lockheed Martin.

4.   Beginning in the late 1980s, Martin-Marietta and Mobil Finishes, or their respective successors, have been sued either in the same suit or different suits in which claimants allege that the claimants or their decedents sustained bodily injury, sickness, disease, or wrongful death from exposures to asbestos allegedly contained in a line of products distributed and marketed under the trade names "Dum Dum" and "Asgum" (the "Dum Dum Product(s)").

5.   Prior to 1963, Martin-Marietta designed, manufactured, distributed, and marketed the Dum Dum Products.  By agreement dated July 1, 1963, Mobil Finishes acquired the Dum Dum Product line from Martin-Marietta.  See Agreement of Sale attached hereto as <u>Exhibit A</u>.

6.   On information and belief, Lockheed Martin, Martin-Marietta, and/or Martin-Marietta's insurer, CCC, have been continuously paying defense costs and settlements in connection with the asbestos claims alleged against Martin-Marietta and/or Lockheed Martin.

7.   ExxonMobil recently received a letter from Resolute Management Inc. ("Resolute"), allegedly acting as the third-party administrator for certain asbestos claims and insurance policies issued by CCC, sent to ExxonMobil's offices in Houston, Texas, dated February 4, 2016, demanding that ExxonMobil reimburse nearly $16 million of defense costs and indemnity payments that CCC allegedly made on Martin-Marietta's or Lockheed Martin's behalf in connection with the asbestos claims relating to the Dum Dum Products.  *See* February 4, 2016 Letter from Resolute to ExxonMobil, attached hereto as <u>Exhibit B</u>.  Moreover, the letter requested that ExxonMobil contact Resolute to discuss the handling of asbestos claims going forward.

8.   On information and belief, Lockheed Martin consented to, participated in, and cooperated with Resolute's decision to demand payment from ExxonMobil.

9.   Resolute's February 4th letter based the demand on a 1963 agreement whereby Mobil Finishes acquired from Martin-Marietta the Dum Dum Product line.  According to the letter, the agreement "contemplated" that Mobil Finishes should have been defending and indemnifying Martin-Marietta for certain asbestos-related liabilities since 1963.

10. ExxonMobil disputes the interpretation of the 1963 agreement in Resolute's letter and contends that ExxonMobil has no obligation under the agreement, or otherwise, to pay or reimburse Lockheed Martin, or Martin-Marietta's insurer for any of the costs that have been incurred or may be incurred in connection with asbestos claims alleged against Martin-Marietta or Lockheed Martin.

**PARTIES**

11. Plaintiff Exxon Mobil Corporation is a corporation organized under the laws of the State of New Jersey, with its principal place of business at 5959 Las Colinas Boulevard, Irving, Texas.

12. On November 30, 1999, Exxon Corporation ("Exxon") merged with Mobil Corporation ("Mobil").  Exxon was renamed Exxon Mobil Corporation and continued to hold Mobil as a wholly owned subsidiary.  In 1965, Mobil Finishes merged with an entity that would later change its name to Mobil Oil Corporation and then ExxonMobil Oil Corporation, which was at all relevant times a subsidiary of Mobil**.**

13. Defendant Lockheed Martin Corporation is a corporation organized under the laws of Maryland, with its principal place of business at 6801 Rockledge Drive, Bethesda, Maryland.

**JURISDICTION AND VENUE**

14. This Court has subject matter jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1) in that the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000.

15. This Court has personal jurisdiction over Defendant in that Resolute specifically directed its demand for reimbursement of defense costs and indemnity payments to ExxonMobil in the State of Texas and this action arises out of that demand.  Upon information and belief, Lockheed Martin consented to, participated in, and cooperated with the demand and permitted Resolute and CCC to exercise Lockheed Martin's alleged rights under the agreement. Furthermore, Lockheed Martin's representatives traveled to Texas in February 2015 for a

meeting in Houston, Texas with ExxonMobil's representatives to discuss the issues now before this Court.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. The demand was directed to ExxonMobil in Houston, Texas.

## FACTUAL BACKGROUND

17. Beginning in or about the late 1950s, Martin-Marietta designed, manufactured, distributed, and marketed the Dum Dum Products, which were a line of protective coating products allegedly containing very small amounts of encapsulated asbestos.

18. By Agreement of Sale dated July 1, 1963, Mobil Finishes acquired certain paint and chemical coatings product lines from Martin-Marietta, including some Dum Dum Product lines.

19. Mobil Finishes manufactured some Dum Dum Products from 1963 until 1980.

20. Beginning in approximately the late 1980s, Martin-Marietta and Mobil Finishes (or their successors) have been named as defendants, either together or individually, in thousands of suits, alleging that claimants or their decedents sustained bodily injury, sickness, and disease, or wrongful death, as a result of their exposure to asbestos in Dum Dum Products (the "Asbestos Claims").

21. Numerous Asbestos Claims are currently pending and continue to be brought against Martin-Marietta or Mobil Finishes, or their successors.

22. For decades, Martin-Marietta or its insurers, have been responsible for controlling and handling the defense of the Asbestos Claims alleged against Martin-Marietta.

23. On information and belief, Martin-Marietta's insurer CCC has continuously paid defense costs and settlements with respect to the Asbestos Claims alleged against Martin-Marietta and Lockheed Martin.

24. ExxonMobil received a letter dated February 4, 2016 that Resolute sent to ExxonMobil's offices in Houston, Texas, demanding reimbursement within 60 days for nearly $16 million in defense costs and settlement payments that CCC allegedly paid "[f]or many years" on behalf of Martin-Marietta or Lockheed Martin in connection with the Asbestos Claims. *See* Ex. B.

25. Resolute stated in the February 4th letter that it would like to discuss future handling of claims involving the Dum Dum Products with ExxonMobil.

26. On information and belief, Lockheed Martin consented to, participated in, and cooperated with Resolute's decision to send the February 4th letter demanding payment from ExxonMobil.

27. In the February 4th letter, Resolute asserted that CCC had paid $3,688,953.61 indemnifying Martin-Marietta for its asbestos liabilities relating to the Dum Dum Products and an additional $28,190,710 in defending such claims.  Resolute asserted that, of these amounts, $1,851,976.81 in indemnity payments and $14,113,943.96 in defense costs are the responsibility of Mobil Finishes.  Resolute also asserted that those amounts include 100% of the defense costs and indemnity payments for claims with exposure dates exclusively after July 1, 1963 and 50% of all other claim costs.  Resolute further asserted that the other claim costs are defense costs and/or indemnity payments for claims that alleged exposure both before and after 1963, or for claims that were ultimately dismissed and that presented potential exposure to periods both before and after July 1, 1963.

6

28. In support of the demand for indemnification, Resolute asserted that the Agreement of Sale "contemplated" that Mobil Finishes would be responsible for "claims" arising on or after July 1, 1963, related to the Dum Dum Products. Resolute further asserted that Mobil Finishes "is the party responsible for all Dum Dum related liabilities alleging exposure after July 1, 1963" and that Mobil Finishes "should have been defending and indemnifying Martin Marietta Corporation for the Dum Dum related asbestos liabilities after that date."

29. Resolute based the demand for indemnification on a paragraph found in section 5 of the Agreement of Sale. Section 5 is the "Payment of Purchase Price and Closing" provision and describes events scheduled to happen at closing.

30. Specifically, Resolute relies on paragraph 5(g) of the Agreement of Sale, which describes a written instrument that Mobil Finishes was scheduled to deliver to Martin-Marietta at the closing, as follows:

> (g) At the closing Purchaser shall deliver to Seller an instrument in writing whereby Purchaser will assume and be responsible for the performance and discharge of all obligations and liabilities accruing as the result of the operation of the Business from and after June 30, 1963, including liabilities and obligations arising out of (i) the items listed on Exhibit I, (ii) all written agreements entered into in the ordinary course of business during the period between June 30, 1963 and the closing which are not in contravention of subparagraph 2(c), and (iii) any agreements entered into during the period between June 30, 1963 and the closing to which Purchaser shall have given its written consent. Other than as expressly set forth in this Agreement, Purchaser does not assume and shall not be liable for any obligation or liability of the Business arising prior to July 1, 1963.

31. Resolute has not cited, referenced, or identified any other contractual language or instruments in support of its demands on behalf of CCC and Lockheed Martin.

32. Paragraph 5(g) is not an agreement to indemnify or defend Martin-Marietta or its successors. This provision states simply that Mobil Finishes will deliver to Martin-Marietta a written instrument in which Mobil Finishes will assume and be responsible for the performance

and discharge of all obligations and liabilities accruing as a result of the operations from and after June 30, 1963.  Resolute did not provide a copy of any such instrument referred to in paragraph 5(g) of the Agreement of Sale with its February 4th letter.  And without the instrument, the Agreement of Sale is otherwise fully integrated, providing that "[t]his Agreement contains the full and complete agreement between the parties and may not be varied, altered, modified or changed except by a written instrument signed by the duly authorized officers of the parties thereto."  *See* Ex. A, ¶ 11.

33. Equally important, paragraph 5(f) of the Agreement of Sale expressly provides that Martin-Marietta, not Mobil Finishes, "shall pay or discharge all of the liabilities and obligations, fixed or contingent, ***known or unknown***, of the Business as of the close of business on June 30, 1963 (other than those ***expressly assumed*** by Purchaser pursuant to Section I of Exhibit H and pursuant to subparagraph (g) below) and ***shall save Purchaser harmless therefrom***)" (emphasis added).  Resolute does not contend that Exhibit H covers the claims at issue and fails to even mention the fact that Martin-Marietta is expressly obligated to hold harmless Mobil Finishes in any action arising from any liability—***known or unknown***—as of the close of business on June 30, 1963, a clause that certainly covers at least claims based on asbestos exposure pre-dating June 30, 1963.

34. Additionally, the fully integrated Agreement of Sale also contains two express indemnification provisions addressing matters unrelated to Asbestos Claims.  *See* Agreement of Sale, ¶¶ 6(i), 8.  These provisions state as follows:

> Seller agrees to indemnify purchaser for any losses or damages incurred for infringement of any United States patent under which Seller is licensed in any of the agreements referred to in Paragraph 5(b)(v) arising out of the operation of the business during the period between the closing under this Agreement and the acquisition by Purchaser of Seller's foreign paint business.

*See* Ex. A, ¶ 6(i).

        \* \* \*

Each party hereto represents to the other that it has not consulted with or retained any brokers, finders or agents in connection with this transaction and each party agrees to indemnify the other with respect to any claims made by any person, firm or organization claimed to have been so employed by the indemnifying party.

*See* Ex. A, ¶ 8.

      35. Notably, both paragraphs 6(i) and 8 ***specifically*** state that the indemnifying party will "***indemnify the other***."  Paragraph 5(g) contains no such language.  In light of the fact that the parties negotiated, drafted, and agreed to two express indemnification provisions in the Agreement of Sale, Lockheed Martin, Resolute, and CCC's position that the vague language in paragraph 5(g) contains yet another implied indemnification obligation defies reason and the parties' 50-plus years of conduct since the execution of the Agreement of Sale.  CCC's strained interpretation of the contract language would also eclipse both of the express indemnification provisions in terms of scope and burden, and drastically shift the risks and costs of the parties' arrangement well beyond what was contemplated by the plain language of the Agreement of Sale.

      36. ExxonMobil contends that it has no obligation to reimburse Lockheed Martin, Resolute or CCC for costs incurred in the defense of the Asbestos Claims.  ExxonMobil contends that it has no obligation to indemnify Lockheed Martin, Resolute or CCC, for future costs incurred in connection with pending or future Asbestos Claims.

### CAUSE OF ACTION
### COUNT 1
### (Declaratory Relief Against Defendant)

      37. ExxonMobil repeats and re-allege the allegations set forth in Paragraphs 1 through 36 as if fully set forth herein.

38. ExxonMobil seeks a declaratory judgment and judicial determination of the rights and duties of ExxonMobil and Lockheed Martin with respect to an actual controversy arising out of the Agreement of Sale.

39. Martin-Marietta's insurer, CCC, and its third party administrator, Resolute, with, on information and belief, Lockheed Martin's consent and cooperation and stepping into the shoes of Martin-Marietta, contend that ExxonMobil is obligated to reimburse CCC for defense costs and indemnity payments that CCC has allegedly incurred in connection with Asbestos Claims alleged against Martin-Marietta or Lockheed Martin and to pay such costs and payments on an ongoing basis.

40. Pursuant to the terms of the Agreement of Sale, ExxonMobil is not obligated to pay or reimburse Lockheed Martin or CCC for any costs or payments that have been allegedly incurred in connection with Asbestos Claims alleged against Martin-Marietta or Lockheed Martin or to reimburse or pay any such costs or payments in the future.

41. An actual and justiciable controversy exists between ExxonMobil and Lockheed Martin as to the existence of any obligation on the part of ExxonMobil to pay or reimburse costs and payments allegedly incurred in the defense or resolution of Asbestos Claims against Martin-Marietta or Lockheed Martin.

42. This controversy is of sufficient immediacy and magnitude to warrant the issuance of declaratory relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

A.  On the Cause of Action, Plaintiff requests that this Court enter a declaratory judgment in favor of Plaintiff and against Defendant, declaring that Plaintiff has no obligation to pay or reimburse any defense costs or indemnity payments incurred in connection with Asbestos Claims alleged against Martin-Marietta or Lockheed Martin;

B.  On the Cause of Action, Plaintiff requests that this Court enter a judgment in favor of Plaintiff against Defendant for all costs incurred in bringing this action, including attorneys' fees, and pre-judgment and post-judgment interest to the extent permitted by law; and

C.  Additionally, Plaintiff requests such other and further relief as this Court may deem just and proper.

**<u>JURY DEMAND</u>**

43.  Plaintiff hereby requests a jury trial on all claims so triable.

Dated: April 4, 2016                               Respectfully submitted,

By:  /s/ Robert Scott
     Robert Scott
     ATTORNEY IN CHARGE FOR PLAINTIFF
     Tx State Bar No. 17911800
     S.D. Tex. Bar No. 3085
     BLANK ROME LLP
     717 Texas Avenue, Suite 1400
     Houston, TX 77002
     Phone:   (713) 228-6607
     Fax:       (713) 228-6605
     Email:    RScott@BlankRome.com

OF COUNSEL:

James R. Murray (*pro hac vice* motion to be filed)
Jared Zola (*pro hac vice* motion to be filed)
James Carter, Jr. (*pro hac vice* motion to be filed)
BLANK ROME LLP
1825 Eye St NW
Washington, DC 20006
Phone:        (202) 420-2200
Fax:           (202) 420-2201
Email:        JMurray@Blankrome.com
                 JZola@Blankrome.com
                 JSCarter@Blankrome.com